UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH N. MALOUF III,                             Case No. 10-14763

                    Plaintiff,                    District Judge Paul D. Borman

v.                                                Magistrate Judge R. Steven Whalen

THE DETROIT MEDICAL CENTER,
ET AL.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court are cross motions for summary judgment by Defendants Detroit Medical Center and Cathy Dockery [Docket #64] filed August 22, 2011, and Plaintiff Joseph N. Malouf III [Docket #71] filed September 12, 2011 which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendants' motion be GRANTED and that Plaintiff's motion be DENIED as moot.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2010, Plaintiff, a former employee of Detroit Medical Center ("DMC") filed suit in this Court, alleging violations of Title VII of the Civil Rights Act of 1962, 42 U.S.C. 2000e, *et seq.* arising from his termination of a romantic relationship with an alleged supervisor and his subsequent job termination.

-1-

The background facts are summarized as follows.  Plaintiff began working as a paramedic at DMC on April 6, 2007.  *Complaint* at ¶5.  He alleges that he was told at a preemployment interview that his work would entail being part of a trauma team involved in the triaging of incoming patients.  *Id.* at ¶6.  Plaintiff claims that in August, 2007, a supervising female nurse, Maria Farao ["Farao"] approached him, proposing a sexual relationship to which he consented.  *Id.* at ¶7.  The Complaint alleges that he ended the relationship "about" December, 2007.  *Id.* at ¶8.  Plaintiff testified that he spent Christmas of 2007 with Farao, but broke up with her "not too long after that." *Malouf Dep*, *Defendant's Exhibit F*, pg. 54.

Plaintiff claims that shortly after ending the relationship, Farao routinely assigned him a work load customarily performed by two or three paramedics.  *Id.* at ¶9.  On January 21, 2008, his shift manager Barb Evans ["Evans"] brought a disciplinary action against him and contrary to DMC policy, prohibited him from appealing her decision. *Id.* at ¶10.  He claims further that in the following month, Evans denied him lunch breaks although he was working 12-hour shifts.  *Id.* at ¶11.  He acknowledges that he received an "expert" job rating from Evans in April, 2008, but alleges that later the same month, he was forbidden by Evans from using a men's restroom adjacent to his work area.  *Id.* at ¶¶13-14.  However, Plaintiff conceded at his deposition that the order could have been issued because he had taken a break prior to the end of his shift.  *Malouf Dep., Defendants' Exhibit F,* pg. 31.

On May 30, 2008, Plaintiff filed a "sexual harassment" complaint against Evans

with the hospital's human resources department ("human resources") on the basis that Evans had been retaliating against him for ending the relationship with Farao. *Complaint* at ¶15. He attributes the fact that he was not subsequently forbidden to use the same men's room to a complaint he sent to human resources following the incident. *Malouf Dep., Defendants' Exhibit F,* pg. 33.

He alleges that shortly after, he was written up for "examining the genitals" of an individual Plaintiff believed had been shot in the groin. *Id.* at ¶16. Defendants concur that seven days following Plaintiff's complaint to human resources, he received a written warning on June 6, 2008 for examining the genitals of a gunshot victim in a public area of the emergency department rather than in a private room. *Defendant's Brief* at 4; *Exhibits A, G.* Plaintiff alleges that as of June 8, 2008, his job duties were changed from "being the triage paramedic to changing adult diapers, feeding patients and drawing routine blood work in the treatment area of the [emergency department]." *Complaint* at ¶20. He alleges that while he was looking for a wheelchair for a patient in a hallway adjacent to the emergency department, Evans ordered him to leave the hallway. *Complaint* at *¶22.* Although the *Complaint* alleges that Plaintiff filed an EEOC action on July 23, 2008 for sexual harassment, he conceded at his deposition that he sent an email to the EEOC but did not follow through with charges at that time, noting that following a June to August, 2008 medical leave, his request to move to the day shift was granted. *Malouf Dep., Defendants' Exhibit F,* pg. 40.

Plaintiff also alleges that in the spring of 2009, supervisor Stephany Gaston attempted

to have him terminated for patient endangerment, insubordination, and malingering, but all three claims were denied as meritless by DMC's human resources department. *Complaint* at ¶¶28-30. Following a September 23, 2009 meeting with Cathy Dockery ("Dockery"), a DMC vice-president of patient care services, relating to whether emergency room staff were permitted to wear t-shirts designed by Plaintiff, Dockery recommended that Plaintiff be discharged. *Id.* at ¶¶32-35. His employment was terminated on September 25, 2009. *Id.* Plaintiff requests compensatory and punitive damages as well as the reinstatement of his former job.


## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6ᵗʰ Cir. 2000).

### III.   ANALYSIS

Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to fire him or take any other adverse action based on his gender or because he engaged in protected activity. Thus, Plaintiff's claims under Title VII are based on circumstantial evidence.

In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973) applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6ᵗʰ Cir. 2003); *Chen v. Dow Chemical Co.,* 580 F.3d 394, 402 (6ᵗʰ Cir. 2009)("retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden shifting framework"). Under that framework, a plaintiff must present a prima facie case of a Title VII violation. Once she or he has done so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6ᵗʰ Cir. 2000).[1] If the defendant satisfies that burden, the plaintiff must then prove, by a

---

[1]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6ᵗʰ Cir. 2001).

preponderance of the evidence, that the proffered reason for the defendant's actions is not the true reason, but rather a pretext for the disputed action.

**Plaintiff Cannot Establish a Prima Facie Case of Either Sexual Harassment or Retaliation**

### A.  Sexual Harassment

The Complaint characterizes the reprimands by Evans (January to June, 2008); Gaston (Spring, 2009); and his termination by Dockery (September 23, 2009) as "sexual harassment."  In order to establish a prima facie case of sexual harassment based on a hostile work environment, Plaintiff must show  that "(1) [he] is a member of a protected class [male]; (2) [he] was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Gallagher v. C.H. Robinson Worldwide, Inc.,*  567 F.3d 263, 270 (6th Cir. 2009).

Although Plaintiff originally alleged that his cause of action was based in part on sexual harassment by Evans between January and June, 2008, he appears to have abandoned his claim of recovery for this period.  Instead, he states that the present Complaint "reflected that he was retaliated against by Gaston and Defendant Dockery" as a result of  filing a May 30, 2008 complaint with human resources.  *Plaintiff's Response, Docket #72* , at 1-2.

Even assuming that Plaintiff did not abandon his sexual harassment claims for the

period between January, 2008 and June, 2008, these claims are nonetheless without merit.

The Complaint alleges that his mistreatment by Evans between January and June, 2008 was

attributable to his January, 2008 breakup with Farao, theorizing that Evans punished him for

breaking up with her "good friend" Farao by unfairly criticizing his work performance and

subjecting him to harsh working conditions.[2]   However, this hypothesis is defeated by

Evans' denial that she socialized with Farao or had any relationship with Farao beyond that

of coworker. *Defendants' Exhibit B, ¶8.*   While the Complaint and Plaintiff's exhibits are

peppered with allegations of "sexual harassment," he cannot show that his alleged treatment

was based on his gender.   Assuming that Plaintiff could establish elements one, three, and

four of a sexual harassment claim, his inability to show that the harassment was based on sex

defeats the claim.

---

[2]

Although Plaintiff now concedes that he is not seeking remedy for Evans' actions, his May 30, 2008 complaint seems to allege a claim of retaliation rather than sexual harassment for his treatment between January and June, 2008.   However, Plaintiff cannot establish a prima facie case of retaliation for the period between January and June, 2008.   Assuming that his January, 2008 termination of the sexual relationship with Farao constituted "protected activity," *see Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1007 (8th Cir.2000)(refusing unwanted sexual advances by a supervisor a "basic form of protected conduct"), he cannot establish a causal connection between Evan's actions and his termination of his relationship with Farao.   He does not contest Evan's statement that Farao and she were not friends.   Plaintiff's claim that Evans' unfairly criticized his  unassailable work product is at least partially undermined by the fact that prior to January, 2008, a patient advocate employed by DMC had already sent Evans a complaint regarding Plaintiff's workplace demeanor. *Docket #*71-2 at pg. 2 of 50.   Defendants have provided legitimate, non-retaliatory reasons for Plaintiff's June 6, 2008 disciplinary writeup, noting that Plaintiff improperly examined the genitals of a patient in a public area of the emergency room. Plaintiff's claim that he was assigned to less exciting duties for a few days following the writeup does not constitute an "adverse action" for the purposes of a Title VII retaliation claim. *Wasek v. Arrow Energy Services, Inc.,*  682 F.3d 463, 468, 470 (6th Cir. 2012).

Although Plaintiff repeatedly characterizes his May 30, 2009 complaint to human resources as a "sexual harassment" complaint, at no point in the three-page single-spaced email (detailing the reasons why his request to be transferred to the day shift should be granted) does Plaintiff allege that his allegedly poor working conditions were based on his gender or that he was being punished for ending a sexual relationship with a higher ranking staff member. *Plaintiff's Response, Docket #72,* pgs. 8-10 of 36. Instead, Plaintiff accuses Evans of poor administrative skills; allowing the emergency department to be understaffed; violating the Health Insurance Portability and Accountability Act ("HIPAA"); calling him a "little baby" when he complained about his work load; and assigning him "walk in" duty after he made verbal complaints about the job assignment. *Id.* Although the May, 2008 human resources complaint also alleged that Evan's directed him not to use a men's room during a shift, Plaintiff conceded that the directive was not a proscription on using the men's room altogether, but rather, using the men's room before his shift had ended. *Id.* at 10.[3]

Likewise, Plaintiff's allegation that the events post-dating his May 30, 2008 complaint to human resources amounted to "sexual harassment" are also without merit. While he alleges that he received a unwarranted writeup for examining the genitals of a gunshot victim

_____

[3]

Plaintiff composed a second email to human resources on July 30, 2008 (shortly before his June to August, 2008 medical leave ended) again requesting to be transferred to the day shift. *Docket #72-2,* pg. 17 of 50. The re-submission of the transfer request adds new charges of supervisory misconduct to the original request, including allegations that Farao used her rank to coerce him into a sexual relationship then assaulted him after he terminated the relationship. *Id.* Of course, his July 30, 2008 statement to human resources that Farao coerced him into having sex stands at odds with Plaintiff's present position that the relationship was consensual. *Complaint* at ¶7.

one week after his May 30, 2008 human resources communication, the record shows that he was criticized for examining the victim's genitals in a *public area* of the emergency department. *Defendant's Brief* at 4; *Exhibits A, G.*   Although Plaintiff believes that Evan's writeup was unjust, he does not explain how it was attributable to his gender.  His allegation that in the few days after the writeup and before his June, 2008 medical leave he was required to change adult diapers, feed patients and draw blood does not state a claim of sexual harassment. *Complaint* at ¶20.  His allegations that in the spring of 2009, Stephany Gaston attempted to have him terminated for patient endangerment, insubordination, and malingering is also bereft of any mention that he was harassed because of his sex. *Id.* at ¶¶28-30.  Although Plaintiff and Defendant Dockery dispute the particulars of the September 23, 2009 meeting precipitating his termination, once again, Plaintiff has failed to show that Dockery's alleged ill-treatment of him was attributable to his gender.

## B. Retaliation

As set forth in Plaintiff's response, he appears to have narrowed his claims to allegations that Gaston's Spring, 2009 disciplinary action and Dockery's September 23, 2009 recommendation for his termination were animated by retaliatory animus for his May 30, 2008 complaint about Evans.  To establish a prima facie case of retaliation Plaintiff must show (1) he engaged in protected activity; (2) Defendants  knew of his exercise of protected rights; (3) Defendants "subsequently took an adverse employment action" against him or subjected him to "severe or pervasive retaliatory harassment" and (4) a causal connection existed between Plaintiff's "protected activity and the adverse employment action." *Barrett*

*v. Whirlpool Corp.,* 556 F.3d 502, 516 (6th Cir.2009).

"[C]omplaining about allegedly unlawful conduct to company management" regarding "an apparent Title VII violation" constitutes "protected activity" under Title VII. *Wasek v. Arrow Energy Services, Inc.,* 682 F.3d 463, 468, 469 (6th Cir. 2012). To satisfy the first requirement of a retaliation claim, Plaintiff must show that he had "'a reasonable and good faith belief'" that  that Evan's actions between January and June, 2008 amounted to a violation of Title VII. *Id.* (citing *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579 (6th Cir.2000)); *EEOC Compliance Manual,* (CCH 8006)).

The evidence shows that in making the May 30, 2008 complaint to human resources, Plaintiff did not hold a good faith belief that Evans' actions amounted to a violation of Title VII. His acknowledged purpose in contacting human resources on May 30, 2008 was  to procure a transfer to a day shift position, a request that was ultimately granted. The veracity of Plaintiff's original May, 2008 complaints, including invective leveled at Evans unrelated to complaints about his own situation, is undermined by the fact that when the requested transfer was not immediately forthcoming, he wrote a second complaint to human resources on July 30, 2008, accusing Farao of using her superior rank to coerce him into an *unwanted* sexual relationship and assaulting him at work. *Docket #71-2,* at pg. 17 of 50. Of course, this contradicts Plaintiff's current position that the relationship with Farao was consensual. *Complaint* at ¶7. Assuming that the present Complaint's allegations are true, one must assume that his July 30, 2008 accusations against Farao are false. That Plaintiff was

apparently willing to "ramp up" his second complaint to human resources with false information after the first complaint did not obtain the desired transfer supports the conclusion that the complaints were made for the purpose of obtaining a favorable transfer, rather than because Plaintiff held a good faith belief that Evans' actions between January and June, 2008 violated Title VII.   Further, given the fact that Plaintiff cannot support a claim of sexual harassment for the period between January and June, 2008, there is no basis for his claim that the May 30, 2008 human resource email was in fact a complaint of Title VII violations.

    In regard to the second requirement for a retaliation claim, Plaintiff has established that Defendants were aware of the protected activity, given that the May 30, 2008 complaint was directed to and received by Defendant DMC's human resource department.[4]   His September, 2009 termination qualifies as an adverse action. *Wasek,* 682 F.3d at 470.   Thus, Plaintiff has satisfied the second and third prong of a retaliation claim.   However, because Plaintiff does not allege that Gaston's alleged complaints about his work in the spring of

---

[4]

    Plaintiff alleges that Dockery falsely stated that she did not become aware of an EEOC complaint filed by Plaintiff until after his termination, noting that his July 30, 2008 email to human resources references "EEOC investigators." *Plaintiff's Motion for Summary Judgment, Docket #71,* pg.15 of 50.   This argument is a red herring, given that Plaintiff concedes that he did not  file charges with EEOC after learning that his request to be transferred to the day shift had been granted. As such, Dockery would not have been served with an EEOC complaint until Plaintiff filed formal charges following his termination.  In any case, because Dockery concedes that she was aware of Plaintiff's complaints to human resources, Plaintiff has otherwise satisfied the second requirement for a retaliation claim. *Defendants' Exhibit A, ¶*10.

2009 resulted in a change in salary, title, or benefits, they do not qualify as "materially adverse actions." *Id.*

Moreover, Plaintiff's inability to establish a causal connection between the alleged protected activity and the adverse action defeats his claim. Contrary to his allegation that his May 30, 2008 complaint and followup complaint in July, 2008 precipitated adverse actions, these communications in fact resulted in his requested transfer to the desired day shift position in August, 2008. As a result of the complaints, the workplace change by all accounts was positive rather than adverse. Apparently, the Plaintiff cannot take "yes" for an answer.

Further, Plaintiff makes no allegations of adverse actions anytime between the first week of August, 2008 and Spring, 2009. No reasonable trier of fact could conclude that as a result of the complaints, Defendants granted the desired transfer request, but "laid in wait" until the spring of 2009 to commence the retaliatory activity. Other than the fact that the May and July, 2008 complaints occurred prior to Gaston's alleged disciplinary action, neither Plaintiff's allegations nor 400-plus pages of exhibits provides any illumination as to how Gaston's actions were related to the protected activity from the year before. Plaintiff's claim of a causal connection between the May, 2008 complaint and Gaston's actions in the Spring, 2009 is further undermined by Gaston's affidavit stating that she did not issue any writeups of Plaintiff's conduct. *Defendants' Exhibit H,* at ¶5.

Likewise, the well documented e-mail accounts of the lead-up to Plaintiff's final

confrontation with Dockery on September 23, 2009, do not provide any support for a causal connection between the termination for insubordination and Plaintiff's May, 2008 complaint to human resources. Put differently, even assuming that Plaintiff could establish a prima facie case of retaliation, affidavits by Dockery and her administrative assistant stating that Plaintiff was loud, aggressive, and threatening at the September 23, 2009 meeting establish that Plaintiff was terminated for legitimate, non-pretextual reasons unrelated to the May and July, 2008 "protected" conduct. *Defendants' Exhibit A* at ¶17, *Exhibit I.*[5]

The record, including Plaintiff's myriad submissions, also supports the conclusion that Plaintiff made unfounded Title VII-type allegations for the purpose of obtaining various tactical advantages over supervising staff. As discussed above, Plaintiff's July 30, 2008 complaint to human resources that Farao had coerced him into a non-consensual relationship is directly contradicted by his later position that the affair was consensual. Despite the fact that Plaintiff was informed by Dockery on multiple occasions prior to his termination that his t-shirts designs could not be worn by employees during working hours, the record supports the conclusion that Plaintiff attempted to override her directive by procuring the

---

[5]

Plaintiff alleges that Defendants deliberately filmed over surveillance video in the hallway outside the meeting room which would show that his behavior at the time of his termination was not threatening. *Plaintiff's Motion for Summary Judgment, Docket #71,* pgs. 19-20. This is another red herring. While Dockery stated that Plaintiff was "aggressive," "offensive and threatening" during the meeting held in Evan's office, neither she nor her administrative assistant made any allegations regarding Plaintiff's behavior after he left the office.

"approval" of the t-shirts by another supervising employee, Rick Flynn ("Flynn"), whose authority to approve the shirts was subject to upper management approval. *Docket #71-1,* at pg. 36 of 50.  Rick Flynn later indicated that in fact, he had informed Plaintiff before his September 23, 2009 meeting with Dockery that "approval" for the t-shirts was conditioned upon the determination of the upper management.

The account of the September 23, 2009 by Dockery and her administrative assistant also supports the inference that Plaintiff mischaracterized his interactions with Dockery and other supervisors for ulterior purposes.  During the course of the termination hearing, Dockery allegedly scraped Plaintiff's hand while removing a security pass from his from his lanyard to which Plaintiff stated "now you have just assaulted me, and I will be suing you." *Defendants' Exhibit A* at ¶19, *Exhibit I-1*; *Docket # 71-2*, at pg. 22-25 of 50.  Further, in an apparent effort to generate support for an assault claim against Dockery, Plaintiff made a point of returning the same evening to the emergency department to get treated for the cut to his finger allegedly inflicted by Dockery. *Docket # 71-2*, at pg. 22-26 of 50.  Aside from the obvious fact that a small cut to his finger inflicted several hours earlier would not warrant emergency treatment, emergency room treating staff were unable to locate a cut but observed a "superficial laceration" to one finger.  *Id.*

The evidence provided by Plaintiff to establish Title VII violations shows that far from being the victim of sexual harassment or retaliation, he is author of his own misfortune, and is cynically exploiting remedial civil rights legislation to avoid taking responsibility for his

deficiencies as a DMC employee. The Plaintiff has failed to support any genuine issue of material fact as to his Title VII claims, and under the facts of this case, no rational trier of fact could find in his favor. *Simmons-Harris v. Zelman, supra*. Therefore, summary judgment should be granted in Defendants' favor.

For the same reasons, Plaintiff's motion for summary judgment must be denied.

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' motion for summary judgment [Docket #64] be GRANTED and that Plaintiff's motion for summary judgment [Docket #71] be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections,

including weekends and intervening holidays, the opposing party may file a response.

The response shall be not more than 20 pages in length unless by motion and order such

page limit is extended by the court.  The response shall address specifically, and in the

same order raised, each issue contained within the objections.

s/ R. Steven Whalen

R. STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Date:  August 7, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 7, 2012.

s/Johnetta M. Curry-Williams

Case Manager
